# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LA DELL GRIZZELL,

*Plaintiff-Appellant*,

JOHN DOE, Minor #1; Minor #2; Minor #3,

*Plaintiffs*,

v.

SAN ELIJO ELEMENTARY SCHOOL; SAN MARCOS UNIFIED SCHOOL DISTRICT,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of California,
No. 3:21-cv-00863-CAB-MDD

## PETITION FOR REHEARING EN BANC

CARTER C. WHITE
UC DAVIS SCHOOL OF LAW
CIVIL RIGHTS CLINIC
One Shields Avenue, Bldg. TB-30
Davis, CA 95616

ERIN E. MURPHY
 *Counsel of Record*
JOSEPH J. DEMOTT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiff-Appellant*

September 4, 2024

# RULE 35(b)(1) STATEMENT

As the panel unanimously recognized, this case "raises concerns with grave implications for children's access to justice," and "the only path to relief … is en banc review." Op.8. Appellant La Dell Grizzell brought this action on behalf of her three minor children, alleging race discrimination and blatant violations of a federal education program for homeless youth. But the Grizzells' lawsuit was immediately dismissed—and the panel had no choice but to affirm—under *Johns v. County of San Diego*, which held that "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." 114 F.3d 874, 877 (9th Cir. 1997).

Whether to jettison *Johns'* "counsel mandate" is a question of exceptional importance. *Johns* effectively bars the courthouse doors to tens of millions of children—no matter how clearly their rights have been violated—because their parents cannot afford a lawyer. In addition, *Johns* conflicts with decisions from several other circuits that have rejected its "absolute bar on *pro se* parent representation." *Raskin v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 282 (5th Cir. 2023); *see* Op.6-8 (collecting cases).

# TABLE OF CONTENTS

RULE 35(b)(1) STATEMENT ................................................................. i

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ................................................................................ 1

STATEMENT OF ISSUE ...................................................................... 3

BACKGROUND ................................................................................. 3

    A.    Factual Allegations .............................................................. 3

    B.    District Court Proceedings .................................................. 4

    C.    Appellate Proceedings ........................................................ 5

REASONS FOR GRANTING REHEARING ........................................ 5

I.    This Appeal Presents Exceptionally Important Questions Regarding Indigent Children's Access To The Federal Courts ....................................... 6

    A.    The Counsel Mandate Defies 28 U.S.C. §1654, Which Guarantees the Right to Litigate *Pro Se* in Civil Cases ...................... 6

    B.    The Counsel Mandate Violates Parents' and Children's Constitutional Rights ......................................................................... 10

    C.    A Quarter Century of Experience Has Shown That the Counsel Mandate Undermines Children's Interests ........................... 12

II.    The Counsel Mandate Conflicts With Decisions From Several Other Circuits ......................................................................................... 15

CONCLUSION ................................................................................ 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Adams ex rel. D.J.W. v. Astrue,*
 659 F.3d 1297 (10th Cir. 2011) ........................................................15

*Aronson v. Superior Court,*
 236 Cal.Rptr. 347 (Cal. Ct. App. 1987) ...........................................11

*Boddie v. Connecticut,*
 401 U.S. 371 (1971) ..........................................................................11

*Booth v. United States,*
 914 F.3d 1199 (9th Cir. 2019) ............................................................8

*C.E. Pope Equity Tr. v. United States,*
 818 F.2d 696 (9th Cir. 1987) ............................................................14

*Callahan v. Woods,*
 658 F.2d 679 (9th Cir. 1981) ..............................................................8

*Chambers v. Balt. & Ohio R.R. Co.,*
 207 U.S. 142 (1907) ..........................................................................10

*Cloud v. Mkt. St. Ry. Co.,*
 168 P.2d 191 (Cal. Ct. App. 1946) ......................................................8

*Elustra v. Mineo,*
 595 F.3d 699 (7th Cir. 2010) ............................................................16

*Faretta v. California,*
 422 U.S. 806 (1975) ............................................................................6

*Fernandez-Vargas v. Pfizer,*
 522 F.3d 55 (1st Cir. 2008) ................................................................7

*Fitzgerald v. Camdenton R-III Sch. Dist.,*
 439 F.3d 773 (8th Cir. 2006) ..............................................................8

*Harris v. Apfel,*
 209 F.3d 413 (5th Cir. 2000) ............................................................16

*Howlett ex rel. Howlett v. Rose*,
496 U.S. 356 (1990)............................................................................9

*Iannaccone v. Law*,
142 F.3d 553 (2d Cir. 1998) ..............................................................6

*In re Josiah Z.*,
115 P.3d 1133 (Cal. 2005)..................................................................8

*In re Moore*,
209 U.S. 490 (1908)...................................................................... 9, 12

*Jie Lin v. Ashcroft*,
377 F.3d 1014 (9th Cir. 2004)..........................................................12

*Johns v. County of San Diego*,
114 F.3d 874 (9th Cir. 1997) ................................................... *passim*

*M.L.B. v. S.L.J.*,
519 U.S. 102 (1996)..........................................................................11

*Machadio v. Apfel*,
276 F.3d 103 (2d Cir. 2002) ............................................................15

*Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*,
191 F.3d 1306 (10th Cir. 1999)..........................................................9

*Maras v. Mayfield City Sch. Dist. Bd. of Educ.*,
2024 WL 449353 (6th Cir. Feb. 6, 2024)..........................................16

*Mendoza v. Strickler*,
51 F.4th 346 (9th Cir. 2022).............................................................11

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
297 F.3d 195 (2d Cir. 2002) ............................................................16

*O'Reilly v. N.Y. Times Co.*,
692 F.2d 863 (2d Cir. 1982) ........................................................ 6, 12

*Osborn v. Bank of the United States*,
22 U.S. (9 Wheat.) 738 (1824)..........................................................14

*Palmer v. Valdez,*
560 F.3d 965 (9th Cir. 2009) ..............................................................13

*Pearson v. Callahan,*
555 U.S. 223 (2009) ..............................................................................14

*Raming v. Metro. St. Ry. Co.,*
57 S.W. 268 (Mo. 1900) .........................................................................9

*Ramos v. Louisiana,*
590 U.S. 83 (2020) ................................................................................15

*Raskin v. Dall. Indep. Sch. Dist.,*
69 F.4th 280 (5th Cir. 2023) ...................................................... *passim*

*Robidoux v. Rosengren,*
638 F.3d 1177 (9th Cir. 2011) ...............................................................8

*Rowland v. Cal. Men's Colony,*
506 U.S. 194 (1993) ..............................................................................14

*Smith v. Org. of Foster Fams. for Equal. & Reform,*
431 U.S. 816 (1977) ................................................................................7

*Tennessee v. Lane,*
541 U.S. 509 (2004) ..............................................................................11

*Thomas v. Nationwide Child.'s Hosp.,*
882 F.3d 608 (6th Cir. 2018) .................................................................8

*Tindall v. Poultney High Sch. Dist.,*
414 F.3d 281 (2d Cir. 2005) ................................................... 2, 14, 16

*Troxel v. Granville,*
530 U.S. 57 (2000) ..........................................................................10, 11

*United States v. 30.64 Acres of Land,*
795 F.2d 796 (9th Cir. 1986) .................................................................8

*United States v. Baker,*
58 F.4th 1109 (9th Cir. 2023) ...............................................................9

*United States v. Gaudin*,
    515 U.S. 506 (1995)....................................................................15

*Warner v. Sch. Bd. of Hillsborough Cnty.*,
    2024 WL 2053698 (11th Cir. May 8, 2024) .......................................16

**Statutes**

28 U.S.C. §1654 ................................................................. 6, 17

42 U.S.C. §11431(1) ...............................................................3

Cal. Fam. Code §6500..............................................................7

Cal. Fam. Code §6601..............................................................7

1 Stat. 73 (1789) .................................................................. 6

**Other Authorities**

43 C.J.S. *Infants* §398 (May 2024 update) ..............................................7

Legal Servs. Corp., *The Justice Gap: The Unmet Civil Legal Needs of
    Low-Income Americans* (April 2022) ....................................................13

Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor
    Child's Unconstitutional Catch-22*, 71 Fla. L. Rev. 831 (2019)................ *passim*

**Rules**

Fed. R. App. P. 35(b)(1) ...........................................................15

Fed. R. Civ. P. 17(b) .............................................................7

Fed. R. Civ. P. 17(c) .............................................................7

**INTRODUCTION**

This appeal presents a rare opportunity to jettison a judge-made policy that defies federal statutory and constitutional law, deprives indigent children of access to the courts, and sharply conflicts with decisions from other circuits. In *Johns v. County of San Diego*, this Court adopted a categorical rule that "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." 114 F.3d 874, 877 (9th Cir. 1997). While the panel here had no choice but to apply *Johns*' "counsel mandate," the panel acknowledged compelling "statutory, constitutional, and policy arguments" for overruling it. *See* Op.5-8 & nn.1, 3.

As the Fifth Circuit recently held, the counsel mandate "is inconsistent with" 28 U.S.C. §1654, which guarantees all natural persons—including minors—"a right to proceed *pro se*" in federal court. *Raskin v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 282, 285 n.5 (5th Cir. 2023). Well-established principles empower "a parent [to] vindicate that right for her children, just as she can vindicate her children's other rights." *Id.* at 287 (Oldham, J., dissenting in part and concurring in the judgment). The counsel mandate also violates parents' fundamental right to make critical decisions for their children and indigent children's fundamental right of access to the courts. *See id.* at 293-95; Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22*, 71 Fla. L. Rev. 831, 835-36 & n.27, 860-65 (2019).

Without considering these statutory and constitutional issues, *Johns* adopted the counsel mandate in an effort to protect minors' interests. Nearly three decades of experience have shown, however, that *Johns* actually "offers minors a Hobson's choice." *Raskin*, 69 F.4th at 294 (Oldham, J., dissenting in part and concurring in the judgment). For millions of children whose parents are unable to obtain legal representation, *Johns*' imperative to "litigate [only] with counsel" effectively means "don't litigate at all." *Id.* Far from protecting these children's interests, the counsel mandate deprives them of any hope of vindicating their legal rights, effectively "forc[ing] [them] out of court altogether." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 286 (2d Cir. 2005).

While the panel recognized these "grave implications for children's access to justice," Op.8, it was powerless to address them. But the en banc Court is not bound to continue perpetuating them. And the time is ripe to overrule *Johns* and align this Court with "other circuits [that] have taken a more flexible approach." Op.6. This appeal presents a golden opportunity to do so: Although the "counsel mandate" affects millions of families, it is not every day that a parent attempts to represent her children *pro se*, appeals the district court's application of *Johns*, survives the initial screening process (notwithstanding *Johns*' binding force), Dkt.11, and then tees up these highly consequential issues with the assistance of court-appointed appellate counsel, Dkt.22. This Court should grant en banc review.

# STATEMENT OF ISSUE

Whether *Johns v. County of San Diego*, 114 F.3d 874 (9th Cir. 1997), should be overruled.

# BACKGROUND

## A.    Factual Allegations

Appellant La Dell Grizzell enrolled her three children in San Elijo Elementary School ("San Elijo"), part of the San Marcos Unified School District ("District"), between 2014 and 2015.  ER326-27 (Dkt.13); SER66 (Dkt.37).  She did so through the McKinney-Vento Homeless Assistance Act, which guarantees "each homeless youth … equal access to the same free, appropriate public education … as provided to other children and youths." 42 U.S.C. §11431(1).  Each Grizzell child was the only black student in his or her class.  ER344, ER372; SER8.

The complaint alleges that all three children suffered appalling, racist mistreatment at the hands of their fellow students that the school did little to nothing to prevent.  For example, John Doe #1's peers told him that "blackies don't count." ER331.  He also had a sign hung on his neck stating that he was "for sale," in the direct view of a teacher.  ER352.  Jane Doe #2 was slapped in the face with a lunchbox by a white student.  ER336.  Another student threw her food in the garbage, remarking that "black people are trash."  *Id.*; *see also, e.g.*, SER44 (describing further incidents); ER352-53 (same).  The school district did not take serious action to remedy this discrimination, and faculty and staff frequently asserted prejudiced

assumptions of their own. For example, John Doe #3's teacher stated that "certain demographics come to school not properly fed," ER341, and San Elijo's vice principal opined that the Grizzell children "did not belong at his school," SER7.

## B. District Court Proceedings

After years of informal appeals to the school, Ms. Grizzell filed a *pro se* complaint on her children's behalf in the Southern District of California on May 4, 2021. Just ten days later, the District informed her of its decision to disenroll all three children over her objection. ER250-53. The District expressly declined to find that the Grizzell children no longer qualified under McKinney-Vento; instead, it unilaterally determined—despite a contrary statutory presumption—that "continued enrollment" was not "in [their] best interests." ER252. The Grizzells promptly amended their complaint to challenge the disenrollment. Dist.Ct.Dkt.7; *see* ER388.

The district court immediately dismissed the case under *Johns*. ER5-6. During a brief hearing, the court acknowledged that the Grizzells' allegations "are serious" and maintained that it was "not just ignoring them." ER12. It explained, however, that it was bound by *Johns*. ER11. The court therefore dismissed the complaint solely "because of the lack of counsel," emphasizing that the dismissal had "nothing to do with the merits." ER15.

## C.    Appellate Proceedings

Notwithstanding *Johns*, a panel of this Court determined that the appeal "involves non-frivolous issues," granted Ms. Grizzell *in forma pauperis* status, and ordered the appeal to proceed.    Dkt.11.    This Court subsequently appointed undersigned counsel to represent the Grizzells in this appeal.    Dkts.22-23.

"[B]ound by the rule set forth in *Johns*," the panel had no choice but to affirm the order of dismissal.    Op.8.    The panel unanimously recognized, however, that several other circuits have expressed concerns about the "harmful effect[s]" of *Johns*' rigid counsel mandate and embraced "a more flexible approach."    Op.6-7. The panel concluded that the only way to address these concerns is through en banc review.    Op.8.

## REASONS FOR GRANTING REHEARING

Whether a parent may litigate her children's claims *pro se* is a frequently recurring issue "with grave implications for children's access to justice."    Op.8. Federal law gives the Grizzell children the unequivocal right to proceed *pro se* and empowers Ms. Grizzell to exercise that right on her children's behalf.    Under this Court's decision in *Johns*, however, the Grizzell children cannot sue without an attorney.    That counsel mandate defies both statutory and constitutional law, with the practical effect of depriving the Grizzells and countless other indigent families of

any realistic way to access the federal courts. For precisely that reason, several other circuits have rejected or cabined *Johns*' rule. This Court should do the same.

## I. This Appeal Presents Exceptionally Important Questions Regarding Indigent Children's Access To The Federal Courts.

### A. The Counsel Mandate Defies 28 U.S.C. §1654, Which Guarantees the Right to Litigate *Pro Se* in Civil Cases.

The right of self-representation in civil cases "is both ancient and deeply rooted in American law and history." *Raskin*, 69 F.4th at 299 (Oldham, J., dissenting in part and concurring in the judgment); *see id.* at 290-92. "The Founders believed that self-representation [i]s a basic right of a free people," *Faretta v. California*, 422 U.S. 806, 830 n.39 (1975), and the First Congress enshrined that right in the Judiciary Act of 1789, 1 Stat. 73, 92. *See Iannaccone v. Law*, 142 F.3d 553, 556-58 (2d Cir. 1998). The right of *pro se* access to the courts is thus "a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case." *O'Reilly v. N.Y. Times Co.*, 692 F.2d 863, 867 (2d Cir. 1982).

Today, "[t]he right to proceed *pro se* in civil actions in federal courts is guaranteed by 28 U.S.C. §1654." *Iannaccone*, 142 F.3d at 556. The statute provides, in relevant part, that "[i]n all courts of the United States the parties may plead and conduct their own cases *personally* or by counsel." 28 U.S.C. §1654 (emphasis added). As the Fifth Circuit recently held, this statutory right belongs to adults and

minors alike. *Raskin*, 69 F.4th at 285 n.5. After all, "[n]othing in §1654 limits the right to proceed 'personally'—that is, *pro se*—to those who are at least 18 years old." *Id.* at 292 (Oldham, J., dissenting in part and concurring in the judgment).

Of course, "children usually lack the capacity" to "decide how best to protect [their] interests," so they are "ordinarily represented in litigation by parents or guardians." *Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 841 n.44 (1977). While questions about who counts as a minor or incompetent person are resolved by applying state law, *see* Fed. R. Civ. P. 17(b), no such questions are presented here; the Grizzell children undisputedly lack capacity to sue under California law (and would lack capacity under the law of any other state). ER5-6, ER321-22; *see* Cal. Fam. Code §§6500, 6601; 43 C.J.S. *Infants* §398 (May 2024 update). Given the children's lack of capacity, Federal Rule of Civil Procedure 17(c) authorizes their mother—Ms. Grizzell—to sue on their behalf. ER6, ER13.

A parent who "sue[s] or defend[s] on behalf of" her minor child has full power to conduct the litigation. Fed. R. Civ. P. 17(c); *see* Cal. Fam. Code §6601 ("A minor may enforce the minor's rights by civil action or other legal proceedings in the same manner as an adult, except that a guardian must conduct the action or proceedings."). As an initial matter, the parent has "the right to decide whether to proceed with the prosecution of a civil lawsuit by weighing the attendant costs and benefits." *Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 67 (1st Cir. 2008). Indeed, statutes of

limitations generally apply to minors—despite their lack of capacity—precisely because "parents and guardians are assumed to be adequate surrogates" who are "responsible for initiation of suit in a timely manner." *Booth v. United States*, 914 F.3d 1199, 1205-06 (9th Cir. 2019).

Once a lawsuit is commenced, the parent "is authorized to act on behalf of [her child] and may make all appropriate decisions in the course of specific litigation." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986). For example, the parent "may make binding contracts for the retention of counsel and expert witnesses" on the child's behalf. *Id.* Parents may exercise—or waive—their children's constitutional and statutory rights, including the Seventh Amendment right to a jury trial. *See, e.g.*, *Thomas v. Nationwide Child.'s Hosp.*, 882 F.3d 608, 615 (6th Cir. 2018); *Fitzgerald v. Camdenton R-III Sch. Dist.*, 439 F.3d 773, 776-77 (8th Cir. 2006); *Callahan v. Woods*, 658 F.2d 679, 682 n.2 (9th Cir. 1981); *Cloud v. Mkt. St. Ry. Co.*, 168 P.2d 191, 198 (Cal. Ct. App. 1946). Parents also have the power to settle their children's claims (subject to judicial approval) or dismiss them altogether. *See Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *In re Josiah Z.*, 115 P.3d 1133, 1140 (Cal. 2005). In short, a parent is empowered to wield *all* a minor child's rights when conducting litigation on the child's behalf.

The "right to litigate *pro se* in federal court" is no exception. *Raskin*, 69 F.4th at 287 (Oldham, J., dissenting in part and concurring in the judgment). Indeed, it is well established that children do not forfeit other rights that ordinarily must be asserted "personally" just because they cannot litigate independently. For example, "Fourth Amendment rights are personal rights that 'may not be vicariously asserted,'" *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023), yet children routinely bring Fourth Amendment claims through a parent. *See, e.g.*, *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356 (1990); *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1316 n.6 (10th Cir. 1999). The same goes for statutory rights that can be exercised only by "the party in his own person, and not by agent or attorney," such as the change-of-venue procedure discussed in *In re Moore*, 209 U.S. 490, 499 (1908). In *Moore*, the Supreme Court ratified the Missouri Supreme Court's conclusion that a "next friend" may exercise "person[al]" rights on behalf of an "infant," explaining that the next friend is no mere agent but a stand-in principal possessing "authority to do every act which the interest of the infant demands and the law authorizes." *Id.* (quoting *Raming v. Metro. St. Ry. Co.*, 57 S.W. 268, 275 (Mo. 1900)). After all, it would be "rank injustice" to deny procedural rights to children merely because they "are unable to act for themselves." *Id.*

Simply put, "federal law gives [Ms. Grizzell's] minor children the unequivocal right to 'conduct their own cases personally,' 28 U.S.C. §1654," and

Ms. Grizzell "can vindicate that right for her children, just as she can vindicate her children's other rights." *Raskin*, 69 F.4th at 287, 293 (Oldham, J., dissenting in part and concurring in the judgment). *Johns* nullified that centuries-old right for tens of millions of minors without meaningfully addressing §1654. That is reason enough to reconsider *Johns* en banc.

## B. The Counsel Mandate Violates Parents' and Children's Constitutional Rights.

*Johns* also failed to consider the constitutional problems inherent in its counsel mandate. First, the mandate tramples parents' "fundamental liberty interest[]" in "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality). That parental interest encompasses the right to decide whether—and on what terms—a minor child will exercise "[t]he right to sue," which "is one of the highest and most essential privileges of citizenship." *Chambers v. Balt. & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907). After all, "the choice to retain counsel (or proceed pro se)" is "not only a litigation decision," but an expressive, values-driven "parenting choice" about "how (or whether) to allocate limited family resources to vindicate children's legal interests." Martin, *supra*, at 872.

The counsel mandate usurps this parental prerogative by imposing an irrebuttable presumption that it is *never* "in the interest of minors" to sue without "trained legal assistance." *Johns*, 114 F.3d at 876-77. Even leaving aside the substantive problems with that presumption, *see infra* Part I.C, the Constitution does

not permit courts to "infringe on the fundamental right of parents to make child rearing decisions simply because a … judge believes a 'better' decision could be made." *Raskin*, 69 F.4th at 295 (Oldham, J., dissenting in part and concurring in the judgment) (quoting *Troxel*, 530 U.S. at 72-73 (plurality)); *see also Aronson v. Superior Court*, 236 Cal.Rptr. 347, 351 (Cal. Ct. App. 1987) (courts are not "well situated to judge the wisdom of the parental choice to sue or not to sue").

In addition, the counsel mandate abridges indigent minors' constitutionally protected right to assert legal claims. It is well established that "the right of access to the courts" is a "basic constitutional guarantee[], infringements of which are subject to more searching judicial review." *Tennessee v. Lane*, 541 U.S. 509, 522-23 (2004). Applying that principle, the Supreme Court has repeatedly invalidated measures that limit "access to judicial processes" for indigent individuals "while leaving open avenues … for more affluent persons." *Mendoza v. Strickler*, 51 F.4th 346, 355 (9th Cir. 2022); *see, e.g.*, *M.L.B. v. S.L.J.*, 519 U.S. 102, 107 (1996) (record-preparation fee for civil appeal); *Boddie v. Connecticut*, 401 U.S. 371, 372 (1971) (divorce filing fees). The counsel mandate is precisely that type of unconstitutional policy: It "excludes indigent children from federal courts and deters parents from filing meritorious claims on their children's behalf," regardless of the nature of the indigent child's claim or whether it will expire before the child comes of age. Martin, *supra*, at 836.

Furthermore, *Johns* violates the constitutional rights of *all* minors and mentally incompetent persons. As the Supreme Court recognized in *Moore*, "deny[ing] to infants" a procedural right afforded to all "other litigants"—simply because infants "are unable to act for themselves"—creates a "serious" equal protection problem. 209 U.S. at 499. And the problem is especially acute here because the right at issue is no mere "application for a change of venue," *id.*, but "a basic right of a free people," *O'Reilly*, 692 F.2d at 867.

### C. A Quarter Century of Experience Has Shown That the Counsel Mandate Undermines Children's Interests.

*Johns* did not confront these statutory and constitutional issues. It instead rested on a policy rationale—namely, "protection of a minor's legal rights in federal court." 114 F.3d at 876-77. Unfortunately, more than 27 years of experience has shown that the counsel mandate has the opposite effect: It "deprives children of access to justice" and "undermines the viability of their legal claims." Martin, *supra*, at 855.

1. The core premise of *Johns* is that when minors "have claims that require adjudication, they are *entitled* to trained legal assistance so their rights may be fully protected." 114 F.3d at 877 (emphasis added); *see also Jie Lin v. Ashcroft*, 377 F.3d 1014, 1025 (9th Cir. 2004) ("[T]he right of minors to competent counsel is so compelling that we have joined other circuits in holding that a 'guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a

12

lawyer.'") (citing *Johns*).  That is a commendable aspiration, but it is not the law:

Minors "ha[ve] no right to counsel in civil actions," and courts will not appoint

counsel for an indigent minor absent "exceptional circumstances."  *Palmer v. Valdez*,

560 F.3d 965, 970 (9th Cir. 2009).

It is no secret that "'[t]here is a dearth of legal services available' in this

country 'to meet the legal needs of those who cannot afford to pay.'"  *Raskin*, 69

F.4th at 286.  Recent studies show that "[l]ow-income Americans do not get any or

enough legal help for 92% of their substantial civil legal problems."  Legal Servs.

Corp., *The Justice Gap: The Unmet Civil Legal Needs of Low-Income Americans* 7

(April 2022).  Unable to hire an attorney or obtain free legal services, "a substantial

portion of families" simply cannot comply with the counsel mandate.  *Raskin*, 69

F.4th at 286.  *Johns* thus "force[s] minors out of court," *id.*—no matter how

meritorious their claims—leaving "some of the most vulnerable patrons of the

justice system without legal remedies."  Martin, *supra*, at 833, 855.

2. None of the other proffered rationales for the counsel mandate withstands

scrutiny either.  *Johns* asserted that "[t]he choice to appear pro se is not a true choice

for minors" because they "cannot determine their own legal actions."  114 F.3d at

876.  But that is true of *every* litigation decision.  It is parents' job to make those

decisions on their children's behalf even when they *are* represented by counsel, and

courts are "require[d] … to honor" parents' choices.  *Raskin*, 69 F.4th at 293

(Oldham, J., dissenting in part and concurring in the judgment). There is no valid reason why the decision to proceed *pro se* "'should be set apart from all other choices routinely reserved to children's legal representatives,' like 'whether, when, and where to bring suit, what claims to advance, what information to disclose, and whom to sue.'" *Id.*

*Johns*' attempt to analogize minors to corporations, trusts, and other entities that may sue and be sued only through counsel, *see* 114 F.3d at 877 (citing *C.E. Pope Equity Tr. v. United States,* 818 F.2d 696, 697 (9th Cir. 1987)), also misses the mark. It is well settled that the right to proceed *pro se* belongs to "natural persons"—and "natural persons only." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202-03 (1993); *see Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 830 (1824). Children accordingly possess that right, while corporate entities do not. The counsel mandate improperly creates "a special class of litigants"—unique among natural persons—who cannot litigate "without engaging professional counsel to do so for them." *Tindall*, 414 F.3d at 285-86 (questioning the validity of this approach).

\*    \*    \*

In short, *Johns* is plainly wrong. And it is entitled to little—if any—*stare decisis* weight, as it imposes a judge-made policy that does not purport to derive from, or implement, any statutory or constitutional provision. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 234 (2009); *Ramos v. Louisiana*, 590 U.S. 83, 118-19 & n.2

(2020) (Kavanaugh, J., concurring). *Johns* instead established a rule of judicial practice, based on what it saw as the "interest of minors" and the propriety of "limiting legal representation of others to licensed attorneys authorized to practice before the court." 114 F.3d at 876-77. But experience has proven its assessment incorrect. And there are no meaningful reliance interests "in the case of a procedural rule such as this, which does not serve as a guide to lawful behavior." *United States v. Gaudin*, 515 U.S. 506, 521 (1995). *Johns* should be overruled.

## II. The Counsel Mandate Conflicts With Decisions From Several Other Circuits.

En banc review is also warranted because *Johns* conflicts with subsequent decisions from several other circuits. *See* Op.6-8; *cf.* Fed. R. App. P. 35(b)(1)(B). The Fifth Circuit has expressly rejected *Johns'* "absolute bar on *pro se* parent representation" as "inconsistent with [28 U.S.C.] §1654." *Raskin*, 69 F.4th at 282; *accord id.* at 294 (Oldham, J., dissenting in part and concurring in the judgment). At least three other circuits have rejected *Johns'* rigid requirement that children litigate through counsel (or not at all). Op.6-7. In *Adams ex rel. D.J.W. v. Astrue*, the Tenth Circuit held—*contra Johns*—that the counsel mandate is "not ironclad," carving out an exception for Supplemental Security Income appeals on the ground that "prohibiting non-attorney parents from proceeding *pro se*" in such appeals "would jeopardize seriously the child's [rights]." 659 F.3d 1297, 1300-01 (10th Cir. 2011); *accord Machadio v. Apfel,* 276 F.3d 103, 106-07 (2d Cir. 2002); *Harris v. Apfel*, 209

F.3d 413, 414-17 (5th Cir. 2000). The Seventh Circuit likewise declined to enforce the counsel mandate in *Elustra v. Mineo* to avoid "harming the minors' interest." 595 F.3d 699, 705-06 (7th Cir. 2010); *see Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 201 (2d Cir. 2002) (similar). And the Second Circuit has distilled these various exceptions into a principle that the counsel mandate "should be applied gingerly" to avoid "undermin[ing] a child's interest[s]." *Tindall*, 414 F.3d at 285-86.

Despite being obligated to follow precedent "establish[ing] an ironclad bar" to parental *pro se* representation, an Eleventh Circuit panel recently recognized the "appeal[]" of Judge Oldham's position that the counsel mandate "defies the text of [§1654] and centuries of Anglo-American law." !*Warner v. Sch. Bd. of Hillsborough Cnty.*, 2024 WL 2053698, at *3 (11th Cir. May 8, 2024). The Sixth Circuit likewise recently acknowledged that both the *Raskin* majority and Judge Oldham offer "a more nuanced view" on these "important questions" than the decades-old opinions that adopted the counsel mandate "with little discussion." *Maras v. Mayfield City Sch. Dist. Bd. of Educ.*, 2024 WL 449353, at *2 (6th Cir. Feb. 6, 2024). As these decisions reflect, *Johns* simply has not withstood the test of time.

*    *    *

In sum, the unyielding counsel mandate announced in *Johns* is egregiously wrong and conflicts with the approach taken by several of this Court's sister circuits.

The counsel mandate nullifies minors' statutory right to proceed *pro se*, 28 U.S.C. §1654; abridges parents' fundamental right to care for and control their own children; raises serious equal protection problems; and deprives countless children like the Grizzells of any opportunity to assert legal claims, no matter how meritorious, simply because lawyers are expensive and their family cannot afford to hire one. Having appointed *pro bono* appellate counsel to fully ventilate these issues, *see* Dkt.22, this Court should grant rehearing en banc and overrule *Johns*.

## CONCLUSION

The petition should be granted.

Respectfully submitted,

/s/ Erin E. Murphy

CARTER C. WHITE
UC DAVIS SCHOOL OF LAW
CIVIL RIGHTS CLINIC
One Shields Avenue, Bldg. TB-30
Davis, CA 95616

ERIN E. MURPHY
 *Counsel of Record*
JOSEPH J. DEMOTT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiff-Appellant*

September 4, 2023

**CERTIFICATE OF COMPLIANCE**

1. This motion complies with the type-volume limitation of Circuit Rule 40-1(a), as incorporated by Circuit Rule 35-4(a), because it contains 4,190 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Times New Roman font.

September 4, 2024

<u>s/Erin E. Murphy</u>
Erin E. Murphy

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Erin E. Murphy</u>
Erin E. Murphy

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| LA DELL GRIZZELL, | No. 21-55956 |
| *Plaintiff-Appellant*, | D.C. No. 3:21-cv-00863- CAB-MDD |
| and | |
| JOHN DOE, Minor # 1; Minor # 2, Minor # 3, | OPINION |
| *Plaintiff*, v. | |
| SAN ELIJO ELEMENTARY SCHOOL; SAN MARCOS UNIFIED SCHOOL DISTRICT, | |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted July 18, 2024
Pasadena, California

Filed August 7, 2024

2          GRIZZELL V. SAN ELIJO ELEMENTARY SCHOOL

Before: Kim McLane Wardlaw, Richard A. Paez, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Wardlaw

## SUMMARY[*]

### Counsel Mandate

The panel affirmed the district court's dismissal without prejudice of La Dell Grizzell's *pro se* claims, brought on behalf of her minor children against the San Elijo Elementary School and the San Marcos Unified School District, alleging that the school violated the federal and state civil rights of her children.

The district court dismissed the action without prejudice because of this Circuit's long-established rule, dubbed the "counsel mandate," that precludes Grizzell, as a nonlawyer, from representing her children *pro se* in pursuing their claims

The panel held that notwithstanding concerns raised by Grizzell that the unyielding application of the counsel mandate raised grave implications for children's access to justice, it was bound, as a three-judge panel, by *Johns v. County of San Diego*, 114 F.3d 874 (9th Cir. 1997), which holds that a parent may not proceed *pro se* on her children's behalf.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

GRIZZELL V. SAN ELIJO ELEMENTARY SCHOOL            3

## COUNSEL

Joseph DeMott (argued), Erin E. Murphy, Mariel E. Brookins, and Zachary J. Lustbader, Clement & Murphy PLLC, Alexandria, Virginia; Carter C. White, UC Davis School of Law Civil Rights Clinic, Davis, California; for Plaintiff-Appellant.

Jennifer S. Creighton (argued), Winet Patrick Gayer Creighton & Hanes, Vista, California, for Defendants-Appellees.

## OPINION

WARDLAW, Circuit Judge:

La Dell Grizzell, acting on behalf of her minor children, sued the San Elijo Elementary School and the San Marcos Unified School District, alleging that the school violated the federal and state civil rights of her children. The district court dismissed the action without prejudice because of our long-established rule, dubbed the "counsel mandate," that precludes Grizzell, as a nonlawyer, from representing her children *pro se* in pursuing their claims. Grizzell appeals the order dismissing her children's claims. For the reasons that follow, we affirm.

### I. BACKGROUND

La Dell Grizzell enrolled her children in San Elijo Elementary School, a part of the San Marcos Unified School District, under the McKinney-Vento Homeless Assistance Act, a federal law designed to ensure that "each child of a homeless individual and each homeless youth has equal

4    GRIZZELL V. SAN ELIJO ELEMENTARY SCHOOL

access to the same free, appropriate public education . . . as provided to other children and youths." 42 U.S.C. § 11431(1). Grizzell's *pro se* complaint alleges that her children faced racial discrimination and other civil rights violations while enrolled at San Elijo.

According to the amended complaint, one of the Grizzell children was subjected to racial epithets on the playground; white students slapped another of the Grizzell children in the face with a lunch box, threw her food in the trash, and told her "black people are trash"; a "for sale" sign was placed around one of the Grizzell children's necks during drama class; teachers and staff made discriminatory comments, employed disparate disciplinary measures toward the Grizzell children, and engaged in other forms of "discrimination, retaliation, conspiracy, [and] abuse of power"; and ultimately, the school unlawfully unenrolled all of the Grizzell children. The *pro se* complaint lists 40 claims, including claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, Title IV and Title VI of the Civil Rights Act of 1964, and several other federal and state education laws.

Grizzell sought to proceed without counsel before the district court. The district court held an initial hearing in which the court explained that "before the Court can do anything on the merits," Grizzell "need[ed] to have counsel." Acknowledging that "there may be some very serious allegations here," the district court explained that no matter how meritorious a suit might be, "[a] person can represent themselves, but you cannot represent others, including your own children." Following the hearing, the district court entered an order dismissing the complaint in its entirety because "Ms. Grizzell concedes that this lawsuit only concerns claims of her children." The district court

GRIZZELL V. SAN ELIJO ELEMENTARY SCHOOL          5

instructed that "[i]f the minor plaintiffs wish to proceed with their claims, they may do so only through an attorney licensed to practice in this court." Grizzell appealed and was granted permission to proceed *in forma pauperis*. With the benefit of court-appointed pro bono counsel, she challenges the district court's dismissal of her children's claims.

## II. ANALYSIS

Grizzell contends that she should be permitted to advance her children's claims *pro se*. Our binding precedent forecloses her from doing so.

In *Johns v. County of San Diego*, we held that "'a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.'" 114 F.3d 874, 866 (9th Cir. 1997) (quoting *Osei-Afriyie v. Med. Coll.*, 937 F.2d 876, 882–83 (3d Cir. 1991)). We reasoned that the right to proceed *pro se*, codified in 28 U.S.C. 1654, does not create a "true choice for minors who under state law . . . cannot determine their own legal actions." *Id.* at 876 (quoting *Osei-Afriye*, 937 F.2d at 882–83). Echoing the Third Circuit, we also observed that it "goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys." *Id.* (quoting *Osei-Afriye*, 937 F.2d at 882–83). Moreover, we opined that this rule necessarily followed from the more general rule that "a non-lawyer 'has no authority to appear as an attorney for others than himself.'" *Id*. at 877 (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir.1987)).

Grizzell raises a series of statutory, constitutional, and policy arguments challenging the "counsel mandate" recognized in *Johns*. Grizzell contends that the *Johns* rule is inconsistent with a child's statutory right to proceed "personally" under 28 U.S.C. § 1654, with a child's

fundamental right of access to court and equal protection rights, and with parental rights regarding the care, custody, and control of children.[1] As a policy matter, Grizzell argues that the *Johns* rule makes "the perfect the enemy of the good," foreclosing paths to relief for children from low-income families whose options are representation by a *pro se* parent or no legal recourse at all.

Grizzell also emphasizes that other circuits have taken a more flexible approach in certain circumstances. Although most circuits have adopted the "counsel mandate" as a general rule,[2] some circuits have relaxed the rule in the context of appeals from the denial of social security (SSI) benefits. *See, e.g., Harris v. Apfel*, 209 F.3d 413, 414–17 (5th Cir. 2000) (observing that "prohibiting non-attorney

---

[1] Grizzell relies heavily on a recent dissent from the Fifth Circuit as well as the scholarship of Professor Lisa V. Martin. *See Raskin on behalf of JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 290–99 (5th Cir. 2023) (Oldham, J., dissenting in part and concurring in judgment); Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22*, 71 Fla. L. Rev. 831, 856 (2019).

[2] *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Osei-Afriyie v. Med. Coll.*, 937 F.2d 876, 882–83 (3d Cir. 1991); *Myers v. Loudoun County Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Navin v. Park Ridge Sch. Dist.*, 270 F.3d 1147, 1149 (7th Cir. 2001); *Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882 (8th Cir. 2020); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986); *Devine v. Indian River County Sch. Bd.*, 121 F.3d 576, 581 (11th Cir. 1997). *See also Winkelman*, 550 U.S. at 536 n.1 (Scalia, J., concurring in the judgment in part and dissenting in part) (observing that "[b]oth sides agree . . . that the common law generally prohibited lay parents from representing their children in court, a manifestation of the more general common-law rule that nonattorneys cannot litigate the interests of another" and that "[n]othing in the IDEA suggests a departure from that rule").

parents from proceeding *pro se* in appeals from administrative SSI decisions, on behalf of a minor child, would jeopardize seriously the child's statutory right to judicial review"); *Machadio v. Apfel*, 276 F.3d 103, 106–07 (2d Cir. 2002) (allowing a non-attorney parent to bring an SSI appeal on behalf of his or her child without representation by an attorney if the district court determines that the parent "has a sufficient interest in the case and meets basic standards of competence"); *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1299–1301 (10th Cir. 2011) (adopting the *Harris* and *Machadio* courts' views).

Even beyond the SSI context, several of our sister circuits have acknowledged concerns about the potentially harmful effect of an unyielding application of the "counsel mandate" on children's access to justice. For example, in *Tindall v. Poultney High School District*, 414 F.3d 281, 286 (2d Cir. 2005), the Second Circuit—bound by precedent to apply the counsel mandate—observed that an unyielding application of the general rule might "force minors out of court altogether" where "counsel is as a practical matter unavailable." Further, in *Elustra v. Mineo*, the Seventh Circuit observed that the counsel mandate is "not ironclad" and decided to "give effect" to a mother's *pro se* motion, a one-off action during a brief and critical period when she was unrepresented, ratified by counsel she was later able to procure. 595 F.3d at 705–06. *Elustra* explained that this decision was the only one consistent with the purpose of the rule: "to protect the rights of the represented party." *Id.* at 706. And most notably, the Fifth Circuit in *Raskin* observed that "the absolute bar may not protect children's rights at all," and held that "an absolute bar on *pro se* parent representation is inconsistent with § 1654, which allows a *pro se* parent to proceed on behalf of her child in federal

8          GRIZZELL V. SAN ELIJO ELEMENTARY SCHOOL

court when the child's case is the parent's 'own.'" *Raskin*,
69 F.4th at 282, 286.  The Fifth Circuit conducted a nuanced
analysis acknowledging that both federal and state law have
the potential to render a child's case the parent's "own." [3]
*Id.*

As a three-judge panel, however, we are bound by the
rule set forth in *Johns.  See Miller v. Gammie*, 335 F.3d 889,
893 (9th Cir. 2003) (en banc) (a three-judge panel remains
bound  by  prior  panel  precedent  absent  "clearly
irreconcilable" intervening precedent of a higher authority).
Indeed, Grizzell concedes as much and acknowledges that
the only path to relief in her case is en banc review.

### III.  CONCLUSION

Grizzell unquestionably raises concerns with grave
implications for children's access to justice.  Our panel,
however, is bound by *Johns*, which holds that a parent may
not proceed *pro se* on her children's behalf.  For this reason,

---

[3] The *Raskin* litigation also demonstrates at least two other potential
positions on the "counsel mandate."  Judge Oldham, dissenting in part,
would have held that "federal law gives Raskin's minor children the
unequivocal right to 'conduct their own cases personally,'" and that state
law lodges the capacity to exercise that right in parents.  *Id.* at 293
(Oldham, J., dissenting in part and concurring in the judgment).  It is this
position which Grizzell urges us to embrace.  In addition, a court
appointed amicus in the *Raskin* case advocated a case-by-case approach
based upon the rationales courts have offered to justify the social security
exception.  *See* Brief of Court-Appointed Amicus Curiae Supporting
Appellant Allyson Raskin, No. 21-11180, 2022 WL 3356573 at *24–25
(5th Cir. August 8, 2022) (setting forth a four-step framework for courts
to apply in determining whether parents may proceed *pro se* in a
particular case, including factors such as the complexity of the case and
availability of counsel).

GRIZZELL V. SAN ELIJO ELEMENTARY SCHOOL          9

we affirm the district court's dismissal without prejudice of Grizzell's claims on behalf of her children.[4]

**AFFIRMED.**

---

[4] Grizzell's motion for initial hearing en banc, Dkt. 38, is denied. *See* General Order 5.2. Grizzell's motion to dismiss the answering brief, Dkt. 17, and motion for reconsideration, Dkt. 21, are denied as moot in light of the replacement briefing.